UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEBRA A. KUBACKI,

       Plaintiff,

v.                  Case Number 12-15142
                    Honorable Thomas L. Ludington
UNITED STATES DEPARTMENT OF
AGRICULTURE – FARM SERVICE AGENCY,

       Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Defendant U.S. Department of Agriculture is composed of a number of agencies. One of them is the Farm Service Agency, which, as its name suggests, administers a range of federal programs serving the country's farmers. Responsibility for implementing the programs at the local level is delegated to county committees. They are made up of local farmers elected by fellow farmers from the area.

Plaintiff Debra Kubacki was elected to one of these county committees. After several years of service, however, the agency removed her for alleged misconduct. She brought an administrative challenge within the agency seeking reinstatement. When that didn't succeed, she filed suit in this Court pursuant to the Administrative Procedure Act.

Defendant moves to dismiss the complaint. It argues that the Civil Service Reform Act, which establishes a review system for federal employees, precludes Plaintiff's claim.

The question whether the Civil Service Reform Act prevents a county committee member from challenging the agency's decision in federal court appears to one of first impression. For reasons detailed below, the question will be answered in the negative.

Briefly, the Civil Service Reform Act establishes an integrated system of review for civil service employees. The corollary, however, is that the creation of the one comprehensive set of remedies necessarily excludes others. (In the Latin, *expressio unius est exclusio alterius*.) Because federal civil service employees are granted one set of complete rights, other rights are precluded.

County committee members, however, are not civil service "employees" within the meaning of the act. Not included in the act, they are not precluded by it.

# I

## A

Before reaching the specific factual allegations in the complaint, setting the stage with an overview of the relevant organizational structure and actors' roles may be helpful.

### 1

Federal farm programs' administration begins, naturally, in Washington DC. From there, the secretary of agriculture oversees the Farm Service Agency (FSA), which is responsible for administering a number of federal programs for farmers and ranchers (such as commodity, credit, insurance, conservation programs). *See* 16 U.S.C. § 590h(b); *see generally* 3 C.J.S. Agriculture § 43.

The FSA is likewise headquartered in Washington. But it is also composed of more than 2,300 field offices. The primary liaison between headquarters and the field offices is the deputy administrator for field operations.

Next in the organizational hierarchy comes the state committee. 16 U.S.C. § 590h(b)(5)(A); 7 C.F.R. § 7.4. Each state has one, comprised of three to five committee members. § 590h(b)(5)(A). They, "subject to the general direction and supervision of the

Deputy Administrator, [are] generally responsible for carrying out all Farm Programs in the State." 7 C.F.R. § 7.22.

Under the state committees are the county committees who, as noted, are comprised of local farmers elected by their peers. 16 U.S.C. § 590h(b)(5)(B)(ii)(I)(bb); 7 C.F.R. §§ 7.5, 7.9, 7.15. They, "subject to the general direction and supervision of the State committee, [are] generally responsible for carrying out in the county Farm Programs." 7 C.F.R. § 7.23(a). County committees must also "[e]mploy the county executive director." § 7.23(b)(1).

And finally, county executive directors are "responsible for the day-to-day operations of the county office." 7 C.F.R. § 7.25(a). The directors must also "employ the personnel of the county office." 7 C.F.R. § 7.25(b).

**2**

State committee members may be suspended or removed by the secretary of agriculture. § 590h(b)(5)(A). County committee members and executive directors may be suspended by the state committee and by the deputy administrator. 7 C.F.R. §§ 7.28(a), 7.29.

**B**

Because Defendant moves to dismiss the complaint pursuant to Rule 12(b)(6), in evaluating whether the complaint states claims on which relief may be granted the following factual allegations from the complaint are assumed to be true.

**1**

Plaintiff operates a dairy farm in Huron County, Michigan. Six years ago, her peers elected her to the FSA county committee for Huron County.

A part-time job, Huron County committee members average a half-day each month at the office. The county executive directorship, in contrast, is a full-time job. So the county committee members rely on the executive director to inform them on FSA policies.

In 2007, the Huron County FSA office's executive director was Kay Lumsden. She had problems with two employees at the office. So she began documenting the problems in their personnel files.

Three years later, Lumsden was transferred from the Huron County office to another county office. Before she left, she gave the personnel files to Plaintiff for safekeeping until Lumsden's replacement arrived.

When the new director took over, he asked Plaintiff for the files. The two arranged to meet. The new director, however, didn't make the meeting. Because Plaintiff was leaving town, at the director's request she gave the files to the farm bureau manager for safekeeping. The director later retrieved the files without incident.

Sometime later, an FSA investigator contacted Plaintiff and informed her that the agency was investigating the manner that the personnel files were handled. (It would be that investigation that would lead to this case.)

**2**

For the handling of the personnel files, Plaintiff and Lumsden were both disciplined by the state committee. Lumsden was suspended for five days; Plaintiff had her membership on the county committee terminated.

Both women challenged the state committee's decision. After they appeared at an informal administrative hearing, the state committee rescinded Lumsden's suspension. But it sustained the discipline imposed on Plaintiff.

Plaintiff appealed to the deputy administrator. He granted Plaintiff a hearing before an FSA officer, which was held over the course of two days in August 2011. Afterwards, the officer recommended sustaining the state committee's decision. The deputy administrator adopted the hearing officer's recommendation. This litigation followed.

### C

In November 2012, Plaintiff filed suit against Defendant United States in this Court. The complaint requests that the Court set aside Defendant's decision pursuant to the Administrative Procedure Act as arbitrary and capricious. As relief, the complaint asks for reinstatement, lost wages and employment benefits, and other related relief.

Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

### II

Rule 12(b)(1) motions challenging a court's subject matter jurisdiction "fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). Here, Defendant brings a facial attack. Such attacks challenge the sufficiency of the pleading itself. *Id*. In evaluating facial attacks, the court must accept the factual allegations as true and construe them in the light most favorable to the nonmoving party. *Id*.

Rule 12(b)(6) motions, like facial attacks, require the court to "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of [her] claims that would entitle [her] to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). To survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III

Defendant first asserts that the Court lacks subject matter jurisdiction over this case. It is lacking, Defendant argues, because the federal government is immune from suits, absent waiver, and no such waiver exists in this case.

Next, Defendant asserts that the complaint does not state a claim on which relief may be granted because of the Civil Service Reform Act. Specifically, Defendant asserts, that act and the Supreme Court decision in *United States v. Fausto*, 484 U.S. 439 (1988) preclude Plaintiff's Administrative Procedure Act claim.

Because the APA contains an express (albeit limited) waiver of sovereign immunity, Defendant's preclusion argument is taken up first.

### A

#### 1

The Civil Service Reform Act of 1978 (CSRA), Pub. L. 95–454, 92 Stat. 1111 et seq. (codified, as amended, in various sections of 5 U.S.C.) was created to replace "the outdated patchwork of statutes and rules built up over almost a century that was the civil service system." *Fausto*, 484 U.S. at 444 (quotation marks omitted) (quoting S. Rep. No. 95–969, at 3 (1978)); *see generally Developments In The Law — Public Employment*, 97 Harv. L. Rev. 1614–32 (1984) (examining historical antecedents of CSRA).

In place of the patchwork, Congress created a comprehensive "integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various

categories of federal employees with the needs of sound and efficient administration." *Fausto*, 484 U.S. at 445. The operative phrase here is "various categories of federal employees."

As a threshold matter, "employee" is a defined term in the CSRA; it means a person who, among other requirements, has been "appointed in the civil service" either by one of the five enumerated types of officials or by "an individual who is an employee under this section." 5 U.S.C. § 2105(a)(1).[1]

As noted, the CSRA also defines "various categories" of federal employees. Specifically, it broadly groups civil service "employees" into three general categories: "senior executive service employees," "competitive service employees," and "excepted service employees." *Fausto*, 484 U.S. at 441 n.1. And within each of these categories of employees, the CSRA distinguishes between "certain veterans and their close relatives" (referred to as "preference eligibles") and others ("nonpreference members"). *Id*.

## 2

In *Fausto*, the Supreme Court first examined the preclusive effect of the CSRA, holding that a claim brought by a nonpreference employee of the excepted service for backpay under the Tucker Act, 28 U.S.C. § 1491, was precluded by the CSRA.

The case began with the employee being suspended, then terminated, for misconduct. He filed a grievance with his agency, which reduced the punishment to a 30-day suspension. Dissatisfied with this resolution, the employee sought administrative, then judicial, review of the agency's decision. Eventually, the case reached the Supreme Court.

---

[1] The listed categories officials are: "the President; a Member or Members of Congress, or the Congress; a member of a uniformed service; the head of a Government controlled corporation; or an adjutant general designated by the Secretary." 5 U.S.C. § 2105(a)(1) (formatting omitted). As noted, FSA county committee members are elected, not appointed

The Court began by observing that the CSRA extends a number of procedural protections to nonpreference employees of the excepted service, "including 30 days' advance written notice of the proposed action, the right to be represented by an attorney or other representative, a reasonable period of time in which to respond to the charges, and a written decision specifying the instances of unacceptable performance." 484 U.S. at 446. The CSRA does not, however, give these types of employees the right to appeal the agency's decision to the Merit Systems Protection Board or the courts — that right is reserved for "competitive service employees and preference eligible members of the excepted service." *Id.* Consequently, the Court reasoned, the "deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court." *Id.* at 455.

**3**

Unlike the employee in *Fausto*, however, an FSA county committee member is not an "employee" within the meaning of the CSRA. *See* 5 U.S.C. § 2105 (quoted above); *Moore v. Glickman*, 113 F.3d 988, 992 n.4 (9th Cir. 1997) ("The members of the county committees are farmers who are elected, not appointed, to their positions, and so are not themselves 'employees' under the CSRA."); *see also* Def.'s Mot. to Dismiss 7 (acknowledging as much). The principal question in this case is whether this distinction makes a difference.

The reasoning of *Fausto* suggests that it does. The foundation of that decision is that since the CSRA established a complete system of review for distinct categories of civil service employees, the system also circumscribes the review available to those persons. *Fausto*, 484 U.S. at 454–55. The creation of one comprehensive set of procedural remedies excludes all others.

Yet FSA county committee members have no procedural remedies under the CSRA.  *Cf. Krueger v. Lyng*, 927 F.2d 1050, 1054 (8th Cir. 1991) ("[An FSA county committee employee] is not a federal employee as defined by the CSRA, and therefore does not have the benefit of the extensive remedies that this elaborate statute affords." (footnote omitted)).  Not included in the act, under the logic of *Fausto* the county committee members should be not precluded by it.

**4**

Congressional action regarding FSA county employees reinforces this conclusion.  *See, e.g.*, *Miller v. U.S. Dep't of Agr. Farm Servs. Agency*, 143 F.3d 1413, 1415–16 (11th Cir. 1998) (collecting statutes illustrating that Congress was aware of these persons status and "has chosen to give such workers only selective employment rights"); *Moore v. Glickman*, 113 F.3d 988, 992–94 (9th Cir. 1997) (same); *Krueger*, 927 F.2d at 1056 (same).

As the Eleventh Circuit observes, "when Congress has wished to confer CSRA 'employee status' on [FSA] county staffers, it has done so by express terms." *Miller*, 143 F.3d 1413, 1416 (citing 5 U.S.C. § 8331(1)(F)).  By that court's count, it had done so in at least seven separate sections of the United States Code.  *Id.* (citing *Moore*, 113 F.3d at 992–93).

Likewise, when the Department of Agriculture was restructured in 1994, Congress expressly provided:  "In the implementation of programs and activities assigned to the Consolidated Farm Service Agency,[2] the Secretary may use interchangeably in local offices of the Agency both Federal employees of the Department and *non-Federal employees of county and area committees.*" 7 U.S.C. § 6932(e)(1) (emphasis supplied).  Congress did not overlook FSA county employees in crafting the definition of "employee" in the CSRA — it excluded them.

---

[2] This agency was renamed the Farm Service Agency (FSA) in 1995.

And although the Sixth Circuit has not yet addressed whether the CSRA precludes FSA county employees from bringing a claim under the Administrative Procedure Act (APA), 5 U.S.C. § 500 et seq., the federal courts of appeals that have are unanimous. It does not. *Miller*, 143 F.3d at 1416 (11th Cir. 1998) ("As a federal worker outside the protections of the CSRA, [the FSA county employee] has a statutory right to judicial review under the APA."); *Moore*, 113 F.3d at 993 ("The district court correctly held that the APA provides [the FSA county employee] with judicial review of her termination."); *see also Miller v. U.S. Dep't of Agric. Farm Servs. Agency*, 966 F. Supp. 1087, 1091 (N.D. Ala. 1997) ("[I]t is clear that [FSA] employees may seek judicial review of their terminations under the rubric of the [APA]."), *aff'd sub nom. Miller v. U.S. Dep't of Agr. Farm Servs. Agency*, 143 F.3d 1413 (11th Cir. 1998).

For the reasons discussed above, this rule is sound. The CSRA expressly establishes, and thereby implicitly limits, the procedural rights for a defined group of civil service employees. *See* 5 U.S.C. § 2105. But FSA county employees are not within that defined group. The CSRA neither provides them administrative or judicial review nor takes it away. For them, it does not preclude an APA claim.

### 5

But those cases, while instructive, are not this case. They all involve FSA county employees — not FSA county committee members. As noted, the question of whether the CSRA precludes committee members from bringing an APA claim appears to be one of first impression.

The answer, however, is easier than the one for FSA county employees. The CSRA, as discussed above, defines an "employee" as a person who, among other requirements, has been "appointed in the civil service" by certain enumerated federal officials or by someone "who is an

employee under this section." 5 U.S.C. § 2105(a)(1); *see generally Bernabe v. Office of Pers. Mgmt.*, 198 F. App'x 961, 964 (Fed. Cir. 2006) (brackets in original) (discussing § 2105(a)).

FSA county employees are hired — in the language of the CSRA, "appointed" — by the county executive director. 7 C.F.R. § 7.25(b). The only reason that they are not "employees" within the meaning of the CSRA is that county executive directors themselves are not "employees." *See Moore*, 113 F.3d at 992 n.4; *see also Hedman v. Dep't of Agric.*, 915 F.2d 1552, 1554 (Fed. Cir. 1990).

FSA county committee members, in contrast, are elected. 16 U.S.C. § 590h(b)(5)(B)(ii)(I)(bb). They are not employees (much less civil service employees). They are elected officials.

In sum, though this case appears to present a novel question, the answer is plain. The CSRA does not preclude an FSA county committee member from bringing an APA claim. And, for reasons taken up next, because the APA claim is permissible sovereign immunity is not a bar to this suit.

**B**

"The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997) (quoting *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1325 (6th Cir. 1993)); *see generally Rose Acceptance v. Alpena Collision*, 11-14736, 2012 WL 6725857, at \*1 (E.D. Mich. Dec. 27, 2012) (discussing historical origins of doctrine).

A waiver of this immunity, the Sixth Circuit cautions, "must be clear, express, and unambiguous." *Beamon*, 125 F.3d at 967 (quoting *Ryan*, 985 F.2d at 1325). Section 702 of the APA, as noted, contains such a waiver. It provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States.

5 U.S.C. § 702; *see generally* 14A Charles Wright et al., *Federal Practice and Procedure* § 3659 (3d ed. 1998 & 2012 supp.) (discussing § 702).

Thus, Plaintiff's APA claim may proceed — provided that she is "seeking relief other than money damages." Discussing the distinction between money damages and other types of relief in *Bowen v. Massachusetts*, 487 U.S. 879 (1988), the Supreme Court explained:

> Our cases have long recognized the distinction between an action at law for damages — which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation — and an equitable action for specific relief — which may include an order providing for the reinstatement of an employee with backpay.

*Id.* at 893, *quoted in Veda, Inc. v. U.S. Dep't of the Air Force*, 111 F.3d 37, 39 (6th Cir. 1997). Here, as noted, Plaintiff seeks reinstatement with backpay. (Specifically, she seeks reinstatement, lost wages, and lost employment benefits.) Sovereign immunity is not a bar to her suit.

## IV

Accordingly, it is **ORDERED** that Defendant's motion to dismiss (ECF No. 10) is **DENIED**.

Dated: May 28, 2013

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 28, 2013.

                s/Tracy A. Jacobs
                TRACY A. JACOBS