UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEBRA A. KUBACKI,

          Plaintiff,

v.                                                    Case Number 12-15142
                                                    Honorable Thomas L. Ludington

UNITED STATES DEPARTMENT OF
AGRICULTURE – FARM SERVICE AGENCY,

          Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR DISCOVERY**

When reviewing an agency's action, the Administrative Procedures Act directs the court to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Because the review is directed to the administrative record, discovery is ordinarily not available. *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997). Several exceptions to this general rule exist, however, "such as when an agency deliberately or negligently excludes certain documents, or when the court needs certain background information in order to determine whether the agency considered all of the relevant factors." *Id*. (quotation marks omitted) (quoting *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996)). But, the Supreme Court cautions, these exceptions are narrow. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Before supplementing the administrative record, "there must be a strong showing of bad faith or improper behavior." *Id*. Here, Plaintiff Debra Kubacki does not make such a showing. Her motion for discovery will be denied.

# I

## A

Defendant U.S. Department of Agriculture is composed of a number of agencies. One of them is the Farm Service Agency, which, as its name suggests, administers a range of federal programs serving the country's farmers. Responsibility for implementing the programs at the local level is delegated to county committees made up of local farmers elected by fellow farmers.

Plaintiff operates a dairy farm in Huron County, Michigan. Six years ago, her peers elected her to the Huron County FSA committee. A part-time job, committee members average one half-day each month at the FSA office.

The FSA county executive directorship, in contrast, is a full-time job. In 2007, the Huron County executive director was Kay Lumsden. She had problems with two employees at the office. So she began documenting the problems in their personnel files.

In 2010, Ms. Lumsden was transferred to another FSA county office. Before she left, she gave the two personnel files to Plaintiff for safekeeping until the arrival of Ms. Lumsden's replacement, Nathan Prill.

Mr. Prill later asked Plaintiff for the files, and the two arranged to meet on Thursday, July 15. The gentleman, however, was unable to keep the appointment. Because Plaintiff was leaving town to return to her farm, she went to the farm bureau boardroom and left the files on the chair of the office manager, Laura Farr. (Ms. Farr was not an FSA employee or committee member.) Ms. Farr retrieved the files the following Monday (July 19) and gave them to Mr. Prill.

Sometime later, an FSA investigator contacted Plaintiff and informed her that the agency was investigating the manner that the personnel files were handled. It was that investigation that led to this case.

For the handling of the personnel files, Ms. Lumsden and Plaintiff were both disciplined by the state FSA committee. Ms. Lumsden was suspended for five days; Plaintiff's punishment was more severe.

## B

### 1

By letter dated October 19, 2010, the state committee chairperson, Cheryl Kobernik, notified Plaintiff that "it is proposed to remove you from the service." The letter gave one reason for the action: "You failed to safeguard documents that contained Personal Identifying Information (PII) on producers/farmers and employees." The letter also provided two "specifications." The first, "In a sworn statement, you stated that you were given a manila file from [Ms. Lumsden] in March 2010, which contained PII information on employees and producers/farmers. You admitted that you kept these documents at your home." The second,

> In a sworn statement, you admitted while you were in the Huron County Farm Bureau, a non-governmental/commercial office building, on July 15, [2010], you made copies of all the documents contained in a manila file (as referred in Specification 1) for yourself and one duplicate copy for Nathan Prill . . . . You then left the file in the Farm Bureau Board Room in a chair, in which [Ms. Farr] occupies during the Board of Director meetings. You then left the file on the chair over the weekend for Laura Farr (non-government employee) to deliver to [Mr. Prill] in the morning of July 19, 2010.

Finally, the letter identified four materials relied on: (1) the manila folder; (2) Plaintiff's sworn statement; (3) Ms. Lumsden's sworn statement; and (4) "Notice AS-2186."[1]

---

[1] United States Department of Agriculture Notice AS-2186, "Requirements for Transporting Paper Documents Containing PII Outside Work Center," was promulgated in 2009. A copy is available online at http://www.apfo.usda.gov/Internet/FSA_Notice/as_2186.pdf (last visited August 12, 2013).

2

On December 14, 2010, Plaintiff appeared before the state FSA committee. Through counsel, she offered her version of events and why she thought the discipline was inappropriate.

Following the hearing, the state committee met. Those present included Ms. Kobernik, state committee member Eddie Moore, and state executive director Christine White. The meeting minutes reflect:

> A review of the charge against Ms. Kubacki was made and Eddie Moore, STC member made it known his concerns and misgivings surrounding the proposed action. Mr. Moore voiced opinion that proposed action seemed disproportionately harsh given what was presented and what the State Committee now knows to be the circumstances and history of the case.
>
> One hour and forty-five minutes was spent discussing actions and motives of Kubacki and touched on Douglas Factors.[2] The State Committee eventually reached consensus and agreed to let proposed action of removing Ms. Kubacki from service stand.

Via letter dated February 9, 2011, Kobernik issued a decision removing Plaintiff from the service. The letter explained that both the reason and the specifications identified in the October 19 letter had been "sustained," elaborating:

> Your representative stated that there was no policy and if there were, you were never informed of that policy. However, that is simply not true as guidance was issued to all FSA County Offices, titled "New interim guidance concerning releases of information under 2008 farm bill" it included, in part, a definition of Core Personally Identifiable Information (Core PII) and record keeping requirements.
>
> You failed to properly safeguard PII, in accordance with 25-AS (Rev.3) dated 5/5/93, par.43 "Safekeeping Records and Accountable Forms" Section B, "Sensitive Materials" which states in part, "Sensitive documents including disciplinary actions, marketing prices, whistleblowers, COC Minutes (Executive Sessions) etc, need to be stored in a locked file cabinet until released, if applicable."

---

[2] *See generally Douglas v. Veterans Admin.*, 5 M.S.P.B. 313 (1981) (discussing factors that supervisors must consider in determining an appropriate penalty to impose for an act of misconduct).

. . .

> During the oral reply, your representative, provided four (4) affidavits (Exhibits 8, 9, 10 and 12) in which one (1) former and three (3) current Huron County Committee members (including yourself) claimed that they had never received PII training.  However, that is simply untrue, as you completed the annual Information Security Awareness and Rules of Behavior Training for Fiscal years 2007, 2008, 2009 and 2010.  The annual Information Security Awareness and Rules of Behavior training is the *only* PII training available and it is required training by all USDA employees.

Plaintiff appealed this decision to the deputy administrator for field operations.  He granted Plaintiff a hearing before an FSA officer, which was held over the course of two days in August 2011.

**3**

On the first day of the hearing, Plaintiff attempted to call the FSA state executive director, Christine White.  Defendant objected on relevance grounds, explaining: "Ms. White simply was not a proposing or deciding official.  She was not involved in the actions between Ms. Lumsden and Ms. Kubacki . . . .  [She did not] have any involvement in actions and proceeded in the final decision."  Hr'g Tr. 22, Aug. 10, 2011.  Defendant continued: "She was not involved in any training . . . that we'll show that was given to Ms. Kubacki in any proclamation of any of the agency policies regarding PII, and she has no relevant helpful evidence that she can provide at this hearing."  *Id*.  Plaintiff countered that White was "greatly needed," elaborating:

> She was very much aware with the new [county executive director, Mr. Prill,] regarding and dealing with his new office problems and issues that he was having. [Ms. White] overruled the county committee in this operative time that was having management problems with CED Prill, and overruled and gave him a within grade increase, overruling the county committee within their sphere of authority and that is an issue regarding the bias and prejudice and motivation involved here on all aspects of the most influential advisor to the state committee as per both practice and regulation.

> She was very much aware of the AS 2186 regulation that's being obsoleted during her time as [state executive director]. She sat in on the vast majority as represented in the state committee minutes, and there will be honest testimony of her great involvement in conveying information, alleged evidence, opinions, and out-of-hearing rumors and information from the standpoint, including the hour and 45 minutes that the state committee, supposedly, took with respect to discussing [Plaintiff's] motives.
>
> . . .
>
> You're going to hear that she had certain dislike for Kay Lumsden and she had a certain dislike for Debbie Kubacki, all of this operative time, from the time Kay Lumsden left and the selection of the replacement [county executive director]. That is part of the evidence of what created animosity on the part of [the state executive director], the number one advisor and the person who is in almost all these hearings and providing information to the state — directly to the state committee.

*Id*. at 22–23, 25. The hearing officer sustained Defendant's objection to Plaintiff calling Ms. White as a witness, explaining that "the arguments that you are making go more toward what might be an appropriate sanction in the event that the actual [violations] are shown, and that doesn't require the presence of Ms. White." *Id*. at 27.

On the second day of the hearing, Plaintiff called Mr. Moore, Ms. Farr, and Ms. Lumsden as witnesses. (Plaintiff also testified herself.)

Plaintiff's counsel asked Mr. Moore about Ms. White's involvement in Plaintiff's discipline, to which Mr. Moore responded: "I would say that any time Chris White has given the state committee information it's information that we needed to know in terms of issues." Hr'g Tr. 9, Aug. 11, 2011. Mr. Moore elaborated: "She did not take a side on the issues, so to speak, right or left. She was giving information to the state committee based on information that the state committee needed to know." *Id*.

Asked about why he ultimately supported removing Plaintiff from service, Mr. Moore explained that "FSA has a tracking record, and when employees get training . . . there is a way

of tracking to see what type of training that they have had." *Id*. at 36; *see also id*. ("I think they have to sign off and say I received this training.").

Plaintiff has not introduced any evidence about what Ms. Farr was asked. Plaintiff has, however, introduced a partial transcript of Ms. Lumsden's testimony. Asked whether the Huron County committee members had ever received the 2008 farm bill or agency regulation 25-AS, Ms. Lumsden answered that they had not. *Id*. 132, 147.

Plaintiff's counsel asked Plaintiff the same thing. *Id.* 219. Specifically, (Plaintiff responded "I had never heard of that." *Id*.)

Following the hearing, the officer recommended sustaining the state committee's decision. The deputy administrator adopted the hearing officer's recommendation. This litigation ensued.

## C

In November 2012, Plaintiff filed suit against Defendant in this Court. The complaint requests that the Court set aside Defendant's decision pursuant to the APA as arbitrary and capricious.

Defendant moved to dismiss. The motion was denied. *Kubacki v. U.S. Dep't of Agric*, 12-15142, 2013 WL 2319336 (E.D. Mich. May 28, 2013). After the Court ordered supplemental briefing on the availability of discovery, Plaintiff filed a motion for such discovery.

## II

The APA, as noted, obligates courts to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Generally, "courts confine their review to the administrative record, which includes all materials compiled by the agency that were before the agency at the time the decision was made." *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997) (quotation

marks and brackets omitted) (quoting *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996)). Thus, as a general matter discovery is neither necessary nor authorized.

There are exceptions to this rule, of course, "such as when an agency deliberately or negligently excludes certain documents, or when the court needs certain background information in order to determine whether the agency considered all of the relevant factors." *Id.* (quotation marks omitted) (quoting *James Madison*, 82 F.3d at 1095). But the Supreme Court cautions that before compelling "the administrative officials who participated in the decision to give testimony . . . there must be a strong showing of bad faith or improper behavior." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also Charter Twp. of Van Buren v. Adamkus*, 188 F.3d 506 (6th Cir. 1999) (unpublished table op.) (noting that "the reviewing court may exercise its discretion to expand or supplement the administrative record," but only in cases involving "exceptional circumstances"); *Weiss v. Kempthorne*, 1:08-CV-1031, 2009 WL 2095997, at *2 (W.D. Mich. July 13, 2009) ("Supplementation of the record is an unusual action that is rarely appropriate.").

Here, Plaintiff makes three principal arguments why discovery is appropriate.[3] Each is addressed in turn.

### A

First, Plaintiff argues that discovery is appropriate "to determine whether fundamental due process was violated." Pl.'s Br. 4–5. Elaborating, Plaintiff asserts that at the final agency

---

[3] In passing, it should be noted that Plaintiff's brief also enumerates four reasons why discovery is appropriate. First, she writes that discovery is necessary to examine whether Defendant's decision "was adequate and/or whether it's [sic] explanation runs counter to the evidence it had before it." Pl.'s Br. 3. Second, it is necessary to examine whether Defendant "deliberately or negligently excluded evidence or background information needed by the Court in its review." *Id.* Third, it is necessary to examine whether Defendant "exhibited bad faith in advising and providing the [state committee] ex parte information to bring the termination action and the Agency's refusal to allow [Ms. White] to be called and examined as a necessary witness for Plaintiff." *Id.* And fourth, it is necessary to examine whether Defendant "relied on factors it should not have considered, had available evidence it should have considered but did not, and/or failed to consider important aspects of the problem." *Id.* Each of these are conclusions, however, rather than arguments.

hearing Ms. Kobernik "testified Plaintiff had actually not been terminated over the reasons and specifications as contained in her October 19, 2010 charge letter and its supporting documentation. [Ms. Kobernik] claimed that the real reason was that Plaintiff had not followed the Agency training." *Id*. at 4 (citing Hr'g Tr. 108, 247–48, Aug. 10, 2011).

Contrary to Plaintiff's contention, Ms. Kobernik said no such thing at the hearing. There, Plaintiff's counsel asked:

| | |
|---|---|
| [Counsel]: | Are you stating that before that, this action was concluded that the state committee changed what it was charging Ms. Kubacki? |
| [Ms. Kobernik]: | No, no. |
| [Counsel]: | Okay. So reason number one in the two specifications for Kubaki, that is what began an that is what the state committee terminated her and barred her from future service or sustained — |
| [Ms. Kobernik]: | The two specifications. |
| [Counsel]: | That are based upon reason No. 1 as your minutes — |
| [Ms. Kobernik]: | Yes, the two specifications. |

Hr'g Tr. 247–48, Aug. 10, 2011. Likewise, Ms. Kobernik's decision of February 9, 2011, explained that both the reason and the specifications had been "sustained."

Plaintiff's first argument about why discovery is appropriate lacks merit.

**B**

Next, Plaintiff argues that "[t]he uncontroverted hearing testimony and evidence contained in the administrative record shows that the 2008 Farm Bill Interim Guidance was never provided to the Plaintiff." Pl.'s Br. 6. Additionally, Plaintiff asserts that the uncontroverted evidence is that Plaintiff "had never seen or received any copies of the cited Agency Regulation 25-AS and did not know what it referenced or pertained to." *Id*.

This argument does not show why discovery is necessary. The opposite, in fact. If Plaintiff is right and the undisputed record evidence is that she did not receive any training, she does not need to go outside that record to show that Defendant's decision was arbitrary and capricious. As the Supreme Court explains,

> [A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

*S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see generally* Kevin M. Stack, *The Constitutional Foundations of Chenery*, 116 Yale L.J. 952, 955–74 (2007) (discussing *Chenery* principle's application).

Here, Defendant's decision was founded on the training Plaintiff allegedly received (e.g., Notice AS-2186, the 2008, and agency regulation 25-AS). Plaintiff alleges that the uncontroverted evidence in the administrative record is that Plaintiff did not receive this information. If correct, Plaintiff does not need to supplement the administrative record to show that Defendant's decision was unfounded.

Plaintiff's second argument about why discovery is appropriate lacks merit.

## C

Third, Plaintiff argues that discovery is appropriate because state committee members "relied upon the alleged information from their Agency officials and staff who were not a part of the administrative hearing. That information included claims that Kubacki had received such cited materials. The [state committee] received this new and material information in an ex parte fashion." Pl.'s Br. 7. Plaintiff reasons that this information "is plainly material and necessary to the Court's arbitrary and capricious analysis and review. The Court needs such supplementation

to determine (1) the adequacy of the Agency decision; (2) if it runs counter to the evidence that the [state committee] actually had before it; (3) if the [state committee] relied on information it should not have considered or (4) failed to consider available evidence." *Id*. at 8.  Plaintiff's argument lacks merit for several reasons.

First, as noted, Plaintiff asserts that the uncontroverted record evidence is that Plaintiff did not receive this training.  If so, Plaintiff does not need to supplement the administrative record to demonstrate that Defendant's decision was arbitrary and capricious.  Accepting Plaintiff's assertion as correct, there is no evidence in the record that will justify the decision.

Moreover, the information showing that Plaintiff had been trained — training session sign-in sheets signed by Plaintiff for fiscal years 2007, 2008, 2009, and 2010 — is already part of the administrative record.  The documents were introduced into evidence at the August 2011 hearing.

Plaintiff does not want to introduce this evidence, of course, but to depose "[Ms. White], her staff and other officials" who provided this information.  Plaintiff alleges discovery should be authorized to "obtain evidence that [Ms. White] utilized her biased influence and provided false information to pretextually have [the state executive committee] bring and/or sustain the termination action." *Id*.  Plaintiff elaborates that "[the] ex parte communications [are] believed to include motivation and pretextual evidence the Plaintiff needed for her defense." *Id*. at 8–9.

These allegations, however, are not sufficient to entitle Plaintiff to discovery.  As noted, discovery is generally not available unless a plaintiff first makes "a strong showing of bad faith or improper behavior." *See Volpe*, 401 U.S. at 420.  Examples of improper behavior include "when an agency deliberately or negligently excludes certain documents." *Sierra Club*, 120 F.3d at 638 (6th Cir. 1997) (quotation marks omitted) (quoting *James Madison*, 82 F.3d at 1095).

Here, Plaintiff alleges bad faith, but does not show it — much less make a strong showing. Likewise, Plaintiff does not object to Defendant excluding certain documents; rather, she objects to Defendant including the sign-in sheets in its consideration. Plaintiff's third argument about why discovery is appropriate lacks merit.

Arguing against this conclusion, Plaintiff relies on *Stone v. F.D.I.C.*, 179 F.3d 1368 (Fed. Cir. 1999). Her reliance is misplaced.

As a threshold matter, *Stone* did not address a plaintiff's request for discovery, but a request to set aside a decision because of a due process violation. On this issue, the court concluded that an agency's consideration of ex parte communications implicates the "constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond." *Stone*, 179 F.3d at 1376; *see generally* Henry Friendly, *"Some Kind of Hearing"*, 123 U. Pa. L. Rev. 1267, 1282 (1975) ("There can likewise be no fair dispute over the right to know the nature of the evidence on which the administrator relies.").

But, the court cautioned, "not every ex parte communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee." *Stone*, 179 F.3d at 1376–77. Instead, factors to consider in evaluating the communication's substantiality include "whether the ex parte communication merely introduces 'cumulative' information or new information; whether the employee knew of the error and had a chance to respond to it; and whether the ex parte communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner." *Id.* at 1377.

Here, as noted, Plaintiff has not made a strong showing of either bad faith or improper behavior. The Sixth Circuit identifies two exceptions to the general rule against discovery in an

APA case: (1) "when an agency deliberately or negligently excludes certain documents"; and (2) "when the court needs certain background information in order to determine whether the agency considered all of the relevant factors." *Slater*, 120 F.3d at 638 (quoting *James Madison*, 82 F.3d at 1095). That is, discovery is appropriate when an Agency may have considered too little information. Here, Plaintiff does not contend that Defendant considered too little information, but too much.

Ultimately, Plaintiff may be able to show that considering too much information (in an ex parte manner) violated her due process rights. She has not shown, however, that she is entitled to discovery on this question.

### III

Accordingly, it is **ORDERED** that Plaintiff's motion for discovery (ECF No. 21) is **DENIED**.

It is further **ORDERED** that on or before August 30, 2013 Defendant must serve a copy of the administrative record on Plaintiff. When Defendant files its cross-motion on the administrative record, it shall file the entire record under seal. Defendant must also furnish a courtesy copy of the administrative record, bound on the left margin, to chambers.

s/Thomas L. Ludington<br>THOMAS L. LUDINGTON<br>United States District Judge

Dated: August 12, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 12, 2013
                    s/Tracy A. Jacobs
                    TRACY A. JACOBS