UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEBRA A. KUBACKI,

                Plaintiff,                          Case No. 12-cv-15142

v                                              Honorable Thomas L. Ludington

UNITED STATES DEPARTMENT OF
AGRICULTURE – FARM SERVICE AGENCY,

                Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

In November 2012, Plaintiff Debra Kubacki filed suit under the Administrative Procedure Act against Defendant United States Department of Agriculture, requesting that this Court set aside the USDA's termination decision because it was arbitrary and capricious. The USDA terminated Kubacki's employment based on her alleged failure to adequately protect confidential information subject to the Privacy Act, 5 U.S.C. § 552a. After Kubacki pursued an unsuccessful administrative challenge, she filed suit in this Court.

Both parties have filed motions for summary judgment based on the administrative record. Because the USDA's decision to terminate Kubacki's employment was not arbitrary and capricious, and because it is supported by substantial evidence in the record, Kubacki's motion for summary judgment will be denied and the USDA's motion for summary judgment will be granted.

**I**

Kubacki operates a dairy farm in Huron County, Michigan. A.R. 174. In 2007, her peers elected her to the Farm Service Agency (FSA) County Committee for Huron County.[1] A.R. 175. County Committee members assist in administering federal farming support at the county level. As an employee with the County Committee, Kubacki averaged about one-half day each month at the office. Pl.'s Mot. Summ. J. 1.

As chairperson of the County Committee, Kubacki worked closely with Huron County FSA Executive Director Kay Lumsden, who was responsible for the day-to-day operations of the county office. After experiencing disciplinary issues, Lumsden assembled a personnel file on two employees against whom disciplinary action was contemplated. A.R. 161. The file included notes on the employees' medical records, personnel records (including dates of birth and social security numbers), disciplinary materials, and documentation of farm producers' financial dealings with the county committee. A.R. 97. When the disciplinary file became too big to store in the office, Lumsden began storing it at her home. A.R. 166. Lumsden estimated that she kept the disciplinary file in her home for about three years. A.R. 166.

In 2010, Lumsden transferred to an FSA county committee in northern Michigan. A.R. 166. With the approval of the district director, Lumsden left the disciplinary file in Kubacki's care. A.R. 167. No one provided Kubacki with information regarding what she was supposed to do with the file, so she took the file home and "locked it up in our safe which we do with all our important stuff." A.R. 175.

The new executive director, Nathan Prill, soon began experiencing difficulties with the same employees referenced in the disciplinary file, and he requested the file from Kubacki. A.R. 177-78. After describing the contents of the file to Prill, Kubacki agreed to provide him with the

---

[1] The Farm Service Agency is one of the agencies that comprise the USDA.

file. A.R. 179. ("I talked to him for a little over an hour and I described to him what was in the file.").

On July 15, 2010, Kubacki brought the disciplinary file to a public event at the Huron County Farm Bureau.[2] A.R. 179. When Mr. Prill did not show up to the event as arranged,[3] she became "a little flustered" because "[i]t was late. I was closing everything up, people had gone. I was locking stuff down, people had gone. It was 8 o'clock." A.R. 179. Kubacki did not have Mr. Prill's cell phone number and did not know how to reach him. A.R. 179. Moreover, the farmers were "in wheat", meaning that she had only a short period of time in which to harvest her wheat crop. A.R. 179. Kubacki claims "[t]here is a lot of pressure" when the farmers are in wheat, and "I knew I wasn't going to have that luxury of just drive [*sic*] back in 45 minutes to get [the disciplinary file] to Nathan so I was trying to think of a plan how to get the file to him and still be able to function on the farm." A.R. 179.

Kubacki ultimately reached out to her friend Laura Farr, a Farm Bureau manager. A.R. 179. Kubacki explained to Ms. Farr that the disciplinary file contained confidential information:

| | |
|---|---|
| Kubacki: | After I couldn't find Nathan's phone number I called Laura on the cell phone and I asked her if it would be all right if she wouldn't be able and willing to take this file to Nathan. And I told her that I had a file, I did tell her it was confidential. I know there was a question of that before, but I felt it was something I needed to ask her. Normally, it's something you don't but, in this case, I feel it was. It was an important thing to ask. |
| Q: | To convey that it was a sensitive package? |
| Kubacki: | Right. |
| Q: | Confidential package? |

---

[2] The Farm Bureau is not a federal government agency and is not associated with the USDA. Similarly, the Farm Bureau manager is not a federal employee.
[3] Mr. Prill denied that he planned to meet Kubacki at the event: "I tell about 20 people a week, yes, you've got this event going, if I can be there I'll be there. That's what I tell everybody. Sometimes my schedule allows it and sometimes it doesn't permit it. That was not an affirmative scheduled thing saying, yes, I'll see you there." A.R. 53.

Kubacki:        Right.

A.R. 180. Kubacki then left the disciplinary file in the conference room at the Farm Bureau on Thursday night intending that Ms. Farr deliver it to Mr. Prill on Monday. A.R. 180. Kubacki felt comfortable leaving the disciplinary file for Ms. Farr, because "I trust [Ms. Farr] implicitly." A.R. 180.

Mr. Prill received the disciplinary file on the following Monday, but then he reported to his superior about how Kubacki had handled the file. A.R. 53. ("I was surprised by what was in the file. I was concerned by the method of delivery. I reported it as possible PII for method of delivery but not for anything that was in it."). The Michigan FSA State Committee, which is responsible for carrying out all farm programs in Michigan, subsequently began an investigation into Kubacki's and Lumsden's handling of the disciplinary file. The parties' papers do not reflect whether Mr. Prill's supervision of Kubacki or the disciplinary file was investigated as well.

On October 19, 2010, the FSA State Committee sent Kubacki a letter proposing that she be removed from her role with the USDA. A.R. 1607. The letter specified that her proposed removal was because:

Reason 1: You failed to safeguard documents that contained Personal Identifying Information (PII) on producers/farmers and employees.

Specification 1: In a sworn statement, you stated that you were given a manila file from Kay Lumsden (former County Executive Director (CED) Huron FSA County Office) in March 2010, which contained PII information on employees and producers/farmers. You admitted that you kept these documents at your home (locked in a large John Deere gun safe).

Specification 2: In a sworn statement, you admitted while you were in the Huron County Farm Bureau, a non-governmental/commercial office building, on July 15, 210[sic], you made copies of all the documents in a manila file (as referred in Specification 1) for yourself and one duplicate copy for Nathan Prill (CED, Huron FSA County Office) which contained PII. You stated you placed a rubber band around the file and placed a note on it stating it was confidential for FSA CED

- 4 -

> Nathan Prill. You then left the file in the Farm Bureau Board Room in a chair, in which Laura Farr (Office Manager, Huron County Farm Bureau) occupies during the Board of Director meetings. You then left the file on the chair over the weekend for Laura Farr (non-government employee) to deliver to Nathan Prill, CED, in the morning of July 19, 2010.

A.R. 1607. The letter further informed Kubacki that she had "the right to view the material relied upon to support the reason(s) in this notice," and "the right to answer, both personally and in writing, and to furnish affidavits and evidence in support of your answer." A.R. 1608.

On November 5, 2010, the USDA provided Kubacki with the materials State Committee officials had relied on in proposing her removal. The USDA provided Kubacki with (1) the contents of the disciplinary file containing PII, (2) Kubacki's sworn statement regarding the events, (3) Kay Lumsden's sworn statement, and (4) Notice AS-2186, a USDA-issued notice detailing the proper method of handling PII material. A.R. 1116.

On December 14, 2010, Kubacki and her counsel appeared before the State Committee for her oral reply. Kubacki's counsel argued that her removal was improper because the USDA does not have a policy on how to properly handle and transfer PII, and even if it did, the USDA did not provide adequate training to Kubacki. A.R. 493-494. Kubacki's counsel summarized her argument:

> There is no legal violation. There was no policy violation. The only thing, the question that remains to be determined . . . is why there was this action brought in such a Draconian [way] to, basically, remove the victim who did nothing wrong, had no knowledge she was doing wrong, [and] did everything that officials above her [instructed].

A.R. 518. The State Committee did not ask Kubacki any questions during her oral reply.

On February 9, 2011, the State Committee decided to sustain its charges against Kubacki. A.R. 467. In the termination letter, the State Committee addressed the arguments Kubacki had

made at her oral reply, namely, that the USDA lacked any policy on handling PII and had not

provided her with training:

> Your representative stated that there was no policy and if there were, you were
> never informed of that policy. However, that is simply not true as guidance was
> issued to all FSA County Offices, titled "New interim guidance concerning
> releases of information under 2008 farm bill" it included in part, a definition of
> Core Personally Identifiable Information (Core PII) and record keeping
> requirements.

A.R. 467. The termination letter also explained that Kubacki's contention that she had not

received PII training "is simply untrue, as you completed the annual Information Security

Awareness and Rules of Behavior Training for Fiscal years 2007, 2008, 2009, and 2010." A.R.

468. The termination letter concluded by informing Kubacki that she had fifteen days to request

a hearing before the Deputy Administrator for Field Operations. A.R. 469.

Kubacki then appealed to the Deputy Administrator, who is responsible for the

supervision and oversight of FSA State and County Offices. The Deputy Administrator referred

Kubacki's appeal to a Hearing Officer. The Hearing Officer conducted a two-day hearing in

August 2011, and he recommended sustaining the State Committee's decision. The Deputy

Administrator then adopted the hearing officer's recommendation.

## II

Pursuant to the Administrative Procedure Act ("APA"), an agency decision is set aside

only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law." 5 U.S.C. § 706(2)(A). "The arbitrary and capricious standard is the least demanding review

of an administrative action. If there is any evidence to support the agency's decision, the

agency's determination is not arbitrary and capricious." *Kroger Co. v. Reg'l Airport Auth. of*

*Louisville and Jefferson*, 286 F.3d 382, 389 (6th Cir. 2002) (internal citations omitted). "The

court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

Kubacki challenges both the USDA's decision to punish her and its decision that removal was an appropriate punishment. Kubacki claims that the USDA's decision to punish her was arbitrary and capricious because: (1) there was no way for her to know she was doing anything wrong by leaving the disciplinary file unattended; (2) she was the only employee punished even though other County Committee members mishandled PII; (3) her punishment violated her due process rights because the USDA subjectively intended to use Notice AS-2186 as the basis for her punishment, rather than the reason listed in the notice of removal; (4) the USDA violated her due process rights when the State Committee considered information obtained during ex parte communications; and (5) her witness was improperly excluded from testifying before the Hearing Officer, thereby violating her due process rights.

Kubacki then repeats these claims in her argument that removal is an inappropriate punishment. She also argues that Hearing Officer improperly applied the *Douglas* factors when determining that removal was an appropriate sanction for Kubacki's behavior.

### A

Kubacki first claims that she was unaware that leaving the disciplinary file unattended was wrong because the USDA failed to provide any training or guidance on how to properly handle PII material. Kubacki claims that she was at the complete mercy of the USDA when it came to FSA-related information, guidance, regulations, and policies. A.R. 148, 160. She disputes the quality of the training she received, and accordingly, she argues that the Hearing Officer's conclusion that she had received adequate training on PII was arbitrary and capricious.

- 7 -

Regarding the question of whether Kubacki had received any training on handling PII, the Hearing Officer concluded: "The evidence is clear that policy applicable to protection of PII was in place, that Kubacki had received training and had acknowledged that she had received training." A.R. 25. More specifically, the Hearing Officer referred to Lumsden's testimony that she provided Kubacki with printed materials on PII to take home and review. A.R. 164. Accordingly, the Hearing Officer concluded that "Kubacki's contention that she had not received training is not true, although it may be true that Kubacki chose not to review the training materials on PII given to her by Lumsden for her later review." A.R. 25.

Kubacki admits that she received some training in PII. She stated that she received Security Awareness Training, and that "there is a definition [of PII] in there . . . ." A.R. 182. However, she maintains that "there was little if any actual training materials ever seen or received by Kubacki, nor utilized by her, particularly as to reasonably instructing or guiding her on such file handling outside the FSA office." Resp. 12. She explains that the bulk of PII training occurred during Security Awareness Training sessions, and she disputes the adequacy of the training: "if that is what they are calling training I don't believe it's training." A.R. 182.

Contrary to Kubacki's assertion, the Security Awareness Training is sufficient to put Kubacki on notice as to how to properly handle PII. Kubacki received the Security Awareness Training at least twice, as evidenced by her dated signatures. A.R. 1023, 1024. During the 2008 training, Kubacki correctly responded that a social security number "is an example of protected information" under the Privacy Act. A.R. 1031. Her 2010 Security Awareness Training materials explicitly state that PII includes "social security numbers, financial transactions, and medical history." A.R. 1038. Thus, Kubacki had completed enough training to know that the materials in the disciplinary folder contained PII.

- 8 -

The Security Awareness Training material also highlighted the importance of protecting PII and ensuring PII materials are stored securely. The materials warned that "as an employee of USDA, you are personally responsible for protecting Privacy information. Penalties for unauthorized disclosure or misuse could result in a misdemeanor conviction and a fine of up to $5,000." A.R. 1041. The materials outline "a few basic rules" for handling PII: "Maintain the records with the highest degree of accuracy and security. Use the records for official USDA business only. Disclose the records only to authorized individuals." A.R. 1047. There are also some basic precautions to take to ensure PII is not inadvertently disclosed: "Lock filing cabinets that contain protected information. Do not leave documents containing protected information on your desk when you are not in your workspace. . . . Do not view Privacy Act information in public areas." A.R. 1055-56. Finally, the materials admonish: "Don't disclose personal information beyond USDA without authorization." A.R. 1059. The Security Training Awareness materials thus emphasize the importance of protecting PII and suggest ways to ensure that such information is not inadvertently disclosed.

The Security Awareness Training Kubacki received put her on notice that the file contained protected information under the Privacy Act, that she needed to handle the file with utmost care, and that she should not leave the file unattended or unprotected, especially in a public area. Although Kubacki claims her training was insufficient, it was not arbitrary and capricious for the Hearing Officer to conclude otherwise.

**B**

Kubacki next claims that the USDA violated her due process rights by failing to provide her with notice of the proposed grounds for her removal. Although she admits receiving a notice that stated that the reason for removal was her "failure to safeguard documents that contained

Personally Identifying Information," she claims that this was just a smokescreen. She claims that the true basis for her removal was Notice AS-2186, an obsolete regulation governing the handling of PII. As evidence, Kubacki points to a letter from Christine White that indicated that the State Committee relied on four materials in its decision to remove Kubacki: (1) the manila folder containing PII information; (2) Kubacki's sworn statement; (3) Kay Lumsden's sworn statement; and (4) Notice AS-2186. A.R. 1115-1116.

AS-2186 outlined the procedure for transporting documents containing PII outside the FSA work center. AS-2186 contained explicit instructions about how to handle such documents: "Do **not** leave container [containing PII] unattended." AS-2186 at 2 (emphasis original). However, AS-2186 was obsoleted just five days after it went into effect because the information provided in the notice was being re-evaluated. AS-2190. Kubacki claims that, even if she had been provided notice that she violated AS-2186, that violation could not serve as the basis of her removal because it was obsolete.

An agency's removal action can only be sustained based on the ground set forth in the notice. *Torres v. Dep't of Justice*, 343 F. App'x 610, 613 (Fed. Cir. 2009) (citing *Lizzio v. Dep't of Army*, 534 F.3d 1376, 1384 (Fed. Cir. 2008) (an agency may not rely on a ground that is different from the one asserted in the notice)). Thus, the alleged subjective intent of some State Committee members to charge Kubacki with violation of AS-2186 is irrelevant because it was not the grounds listed in the notice of proposed termination. The only way that this Court can sustain Kubacki's removal is if substantial evidence in the record supports the USDA's stated grounds for removal: "[Kubacki] failed to safeguard documents that contained Personal Identifying Information (PII) on producers/farmers and employees." A.R. 1607.

- 10 -

Here, there is substantial evidence in the record to support Kubacki's removal based on the grounds stated in the notice of removal. The first specification states that Kubacki "admitted that [she] kept these documents at [her] home (locked in a large John Deere gun safe)." A.R. 1607. The Hearing Officer stated that "[i]t strains credulity that others in Kubacki's household would not have access to a safe used to store guns." A.R. 20. In addition, the gun safe also contained other personal records, including her will. If something happened to Kubacki, others would need to access her will, which is located in the gun safe along with the disciplinary file. Consequently, the Hearing Officer determined that "[t]he contents of the Lumsden Unofficial File were, therefore, not stored in a location where they would be safeguarded against disclosure to persons who were not FSA employees or others without a 'need to know.'" A.R. 20. Accordingly, there is substantial evidence in the record to support Specification 1 of Kubacki's notice of removal.

The second specification alleged that Kubacki "made copies of all the documents in a manila file," "placed a rubber band around the file and placed a note on it stating it was confidential for FSA CED Nathan Prill," and "left the file on the chair over the weekend for Laura Farr (non-government employee) to deliver to Nathan Prill." A.R. 1607. Kubacki claims that the file was sealed and that leaving it in the Farm Bureau room meant that the file was secured "in a manner better than the files stored and kept in the Huron County FSA office." A.R. 181 (claiming that "It was more secure at the Farm Bureau by far. By far."). Although Kubacki concedes that she left the disciplinary file unattended for three days in a non-governmental building intending that a non-governmental employee retrieve and deliver it, she nevertheless argues that it was more secure in the Farm Bureau, as evidenced by the fact that none of the PII was actually disclosed.

- 11 -

The Hearing Officer rejected Kubacki's argument that she adequately secured the file by sealing the disciplinary file[4] and having Ms. Farr, a trusted friend, deliver the file. The Hearing Officer noted that Farr "owed no duty of trust to FSA." A.R. 23. The Hearing Officer determined that the "risk in reliance on personal relationships that might be appropriate for Kubacki in her private affairs are not the standards that apply to conduct of public business, particularly in circumstances where a course of conduct risked exposure of highly sensitive records that would greatly have embarrassed the persons concerned and FSA if a disclosure had occurred." A.R. 26. In sum, the Hearing Officer concluded that "Kubacki should have been forewarned by common sense alone that leaving a file of highly sensitive records unattended in a non-Government building was not a good idea." A.R. 29. The Hearing Officer's conclusion regarding Specification was not arbitrary and capricious.

There is substantial evidence in the record to support Kubacki's removal under Specification 1 and 2 of the notice of removal. In contrast, the notice of removal did not reference AS-2186, and therefore it cannot be used to sustain the USDA's decision. Although AS-2186 may have influenced the State Committee's understanding on how to properly handle PII, it did not constitute the basis for its removal decision. Even without reference to AS-2186, however, there is substantial evidence in the record to support Kubacki's termination.

---

[4] Kubacki disputes the Hearing Officer's factual finding that the disciplinary file was unsealed. The Hearing Officer noted that "[i]n an era when sticky notes are practically ubiquitous, Kubacki's contention that a rubber band would be the means of choice to attach a note to the exterior of a sealed envelope is surprising." A.R. 22. However, even assuming that the disciplinary file was sealed in an envelope, as Kubacki contends, this factual dispute does not mean that the Hearing Officer's ultimate determination was arbitrary and capricious. *Bean Dredging, LLC v. United States*, 773 F. Supp. 2d 63, 87 (D.D.C. 2011) (Where reasonable minds could differ on some issues, mere fact that two inconsistent conclusions can be drawn from the record does not render agency's decision arbitrary and capricious.).

# C

Kubacki next claims that her termination is the result of inconsistent and disparate treatment on the part of the USDA. First, in regard to the allegation that she improperly stored the disciplinary file, Kubacki points to two other county committee members who also stored copies of the file in their homes. State Committee member Bruce Maurer testified that he keeps a copy of the disciplinary file in a file cabinet, which is often unlocked. A.R. 149. The other member, Ken Koroleski, testified that he keeps the file locked in his personal safe. A.R. 86. Thus, Kubacki argues, the "other two COC members for years were knowingly allowed to handle the Lumsden files in similar fashion outside of the governmental office, without being questioned, instructed, charged or removed by the Agency. . . . This Agency has never inquired, investigated or wanted to retrieve those files, all of which is grossly disparate treatment and inconsistent with the termination action leveled against Kubacki." Pl.'s Resp. at 6-7.

The USDA determined that Kubacki failed to safeguard the file containing PII, in contravention of USDA policies. The USDA's determination was partly based on Kubacki's keeping the disciplinary file unsecured in her home, as other State Committee members admit doing. However, Kubacki ignores the second specification: that she left the file unattended for three days in a non-governmental building. No other State Committee member admits to leaving PII material unattended in a non-governmental building, and therefore her conduct is sufficiently differentiated from the other State Committee members'. Accordingly, the USDA did not act arbitrarily and capriciously by punishing Kubacki when she violated agency policy.

Kubacki also argues that the USDA acted arbitrarily and capriciously by terminating her employment, but only suspending Lumsden. Although both Kubacki and Lumsden were punished as a result of their actions in connection with Kubacki's leaving the disciplinary file

unattended, Kubacki claims that the harsher punishment she received is a result of disparate treatment.

An agency must provide an adequate explanation to justify treating similarly situated parties differently. "When an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld." *Anna Jaques Hosp. v. Sebelius*, 583 F.3d 1, 7 (D.C. Cir. 2009).

Here, the USDA's decision to give Kubacki a different punishment than Lumsden is adequately explained and supported by substantial evidence in the record. There are several distinguishing characteristics between Lumsden's and Kubacki's conduct, all of which support different penalties for each.

To begin, the Hearing Officer pointed out the differences in Kubacki's and Lumsden's alleged wrongdoings. Lumsden allegedly violated PII policies by storing the disciplinary file inappropriately and by handing the file to Kubacki to deliver rather than delivering the file directly to Mr. Prill. The Hearing Officer differentiated Lumsden's misconduct, stating that there is a "material difference between Lumsden's off-site storage arrangement in an apartment that she alone occupied and Kubacki's storage of the file in a location necessarily accessible by others." A.R. 27.

As a result of their different misconduct, Lumsden and Kubacki faced different charges. The USDA charged Lumsden with violating AS-2186: "You violated AS-2186, Requirements for Transporting Paper Documents Containing PII Outside Work Center, when you failed to safeguard PII on employees and producers/farmers." A.R. 422. The USDA later realized that Notice AS-2186 had been rescinded, and therefore it could not sustain an action against

- 14 -

Lumsden. ("The Notice AS-2186 was rescinded with Notice AS-2190, therefore, you are not in violation of this Notice."). Because the USDA was not able to sustain an action against Lumsden based on AS-2186, it instead issued a letter of reprimand. A.R. 463. Thus, it appears the USDA was obligated to drop the charge against Lumsden because the notice of removal was based on an obsolete regulation.

In contrast, Kubacki was charged with the broader and more inclusive "failure to safeguard PII." Kubacki's charge was not limited to an alleged violation of AS-2186 (as explained above). The charge instead encompassed Kubacki's entire range of misconduct, from improperly storing the file in her home, to leaving the file unattended and unsecured for three days, to arranging for a non-USDA employee to deliver the unsecured file.

The Hearing Officer's explanation detailing why Lumsden and Kubacki faced different punishments is not arbitrary and capricious, and substantial evidence in the record supports the different punishments.

## D

Kubacki claims that the State Committee's ex parte communication with Kansas Office employees violated her due process rights. During the oral reply, Kubacki claimed that she "never received Personal Identifying Information training to have any knowledge regarding regulations or agency policy on the subject of having or handling such files." A.R. 1382. To investigate this assertion, the State Committee conducted a conference call with USDA Kansas City Management[5] officials regarding what kind of training, if any, Kubacki had received during her employment. The Kansas City officials responded that Kubacki had received PII training on at least four occasions. The State Committee then utilized this information when deciding to

---

[5] The Farm Service Agency's national statistical work is done in Kansas City.
http://www.fsa.usda.gov/FSA/webapp?area=about&subject=landing&topic=sao.

terminate Kubacki's employment. Kubacki claims that this ex parte communication violated her due process rights because she was unable to respond to the information White claimed she received.

A government employee has a right to procedural due process when termination will deprive her of a constitutionally protected liberty or property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). To comport with due process, the pre-termination process of a public employee need only include (1) oral or written notice of the charges; (2) an explanation of the employer's evidence, and (3) an opportunity for the employee to tell her side of the story. *Kuhn v. Washtenaw County*, 709 F.3d 612, 620 (6th Cir. 2013). The pre-termination hearing does not need to be elaborate to comport with due process so long as the employee is entitled to a full hearing with the possibility of judicial review at the post-termination stage. *Martin v. City of Glasgow,* Ky., 882 F. Supp. 2d 903, 911 (W.D. Ky. 2012). When there is a system of post-termination procedures available to the public employee, coupled with a pre-termination right of reply hearing, the due process inquiry is satisfied. *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004). Indeed, the Sixth Circuit recently held that, even if an employee is denied a pre-termination hearing, the availability of post-termination hearing meant that the employee was afforded due process. *See Fields v. Benningfield*, 2013 WL 5926037, at *2 (6th Cir. Nov. 6, 2013).

Here, the USDA's termination procedures comported with due process. First, the USDA provided written notice of the charges to Kubacki: she received a notice of proposed removal on October 19, 2010, that explained that she failed to safeguard PII. Second, the USDA provided Kubacki with an explanation of the evidence against her: on November 5, 2010, she was provided with (1) a copy of the disciplinary file containing PII; (2) Lumsden's sworn testimony;

- 16 -

(3) her own sworn testimony; and (4) Notice AS-2186. Finally, the USDA allowed Kubacki an opportunity to present her side of the story: at the oral reply, Kubacki and counsel presented arguments and sworn affidavits to support her contention that removal was inappropriate. Thus, under Sixth Circuit precedent, the USDA provided Kubacki with due process.

Kubacki does not deny that she received notice of the charges,[6] an explanation of the evidence, and a chance to respond. Instead, she focuses on the USDA's actions after her response at the oral reply. After Kubacki claimed that she did not receive any training on handling PII, the USDA contacted Charlene White, Employee Relations in Kansas City, to confirm or deny Kubacki's claim. A.R. 1613. The State Committee then relied on this ex parte information when it terminated Kubacki's employment.

Kubacki relies on caselaw from the Federal Circuit in claiming that this ex parte communication with Charlene White violated her due process rights. The Federal Circuit has held that a Merit Systems Protection Review official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge. *Ward v United States Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011). But not all ex parte communications rise to the level of due process violations. The Federal Circuit has identified three factors to be used in determining whether ex parte information violates due process: (1) whether the ex parte communication introduces cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner. *Stone v. F.D.I.C.*, 179 F.3d 1368, 1377 (Fed. Cir. 1999).

---

[6] As explained above, Kubacki contests the sufficiency of the notice of proposed removal, claiming her removal was actually based on AS-2186.

Here, the ex parte information received is exactly the kind of impermissible communication banned by *Ward*. After Kubacki initially raised the issue of her lack of training during her oral reply, the State Committee consulted agency officials ex parte to gather new information that would rebut her claims. Kubacki did not have a chance to rebut or respond to the alleged training she received before the State Committee rendered its decision. And that information was of the type likely to result in undue pressure on the officials: State Committee members explicitly stated that the information about the training Kubacki allegedly received was given great weight. Under the Federal Circuit's holding in *Ward*, the State Committee impermissibly relied on ex parte communications in determining that Kubacki should be removed from her position.

*Ward*, however, is not controlling precedent in this circuit, nor is the Merit Systems Protections Review procedure analogous to the APA's review procedures. *Ward* prohibits ex parte communications because, under the MSPR procedure, post-termination proceedings are not available. Once the MSPR issues a decision, the plaintiff's only remedy is to seek relief in federal court. Therefore, if the MSPR relies on ex parte communications and the plaintiff does not have the opportunity to respond, his due process rights are violated.

In contrast, the Sixth Circuit has held that a full and fair post-termination proceeding may make up for any due process deficiency in the pre-termination proceedings. Specifically, "it is the opportunity for a post-deprivation hearing before a netural decisionmaker that is required for due process." *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004). Here, Kubacki was able to seek review of the State Committee's decision by appealing to the Deputy Administrator for Field Operations. Indeed, at the DAFO hearing Kubacki was able to and did produce evidence that disputed the allegation that she had received PII training. Kubacki was able to cross-examine

- 18 -

members of the State Committee who claimed that she had received PII training or that there was mandatory PII training. *See* A.R. 75. Kubacki was also able to testify regarding her claim that she did not receive PII training:

| Kubacki: | The training itself was very basic on PII. |
|---|---|
| Q: | What do you mean by that? |
| Kubacki: | It just explained what PII would be considered to be. Social security numbers, addresses, names, that type of thing, that's the majority of what it discussed on here. But as far as handling PII, no. |

A.R. 163. Kubacki thus had the opportunity to rebut the ex parte allegations that she had received training on PII.    Kubacki's removal therefore comported with the minimum due process requirements under Sixth Circuit case law.

In sum, Kubacki made the adequacy of her PII training an issue at the oral reply, and now she claims that the State Committee's ex parte communications investigating her alleged training violated due process.  However, Kubacki had the opportunity to respond to the statements regarding her training at the DAFO hearing. The State Committee's ex parte communication concerning Kubacki's training history did not violate her due process rights.

**E**

Kubacki claims that she was denied due process of law when the Hearing Officer excluded the testimony of Michigan FSA State Executive Director Christine White during her appeal hearing. Kubacki intended to elicit testimony regarding Ms. White's bias against Kubacki; specifically, that other employees mishandled employee files but were not punished, while Kubacki was. A.R. 36. Kubacki believed that her punishment and removal were the result of Ms. White's bias against her:

- 19 -

> [Others] did, supposedly, the same thing that Ms. Kubacki has been charged and
> accused of, but the agency has no interest in doing anything along the same lines
> to them . . . . You're going to hear that [Ms. White] had certain dislike for Kay
> Lumsden and she had a certain dislike for Debbie Kubacki . . . ."

A.R. 36.

The Hearing Officer denied Kubacki's request to call Ms. White as a witness because her

testimony would be irrelevant and cumulative. The Hearing Officer determined that Ms. White's

testimony regarding how other employees were treated was irrelevant to the question of whether

Kubacki violated USDA policy:

> The basic issue here is what [Kubacki] did . . . . that Ms. Lumsden and Ms.
> Kubacki, your client, were in possession of the same files, they handed them off
> to each other, they preserved copies of the files that were maintained in a manner
> that may or may not be contrary to established policy in effect at the time that
> occurred, and there are issues as to whether the sanction imposed on Ms. Kubacki
> and on Ms. Lumsden are comparable or should be comparable, and I don't believe
> that the testimony of Ms. White is relevant to any of that.

A.R. 37. Furthermore, the Hearing Officer ruled that "any testimony that Ms. White would offer

would be cumulative" because Kubacki would be able to present the testimony of Ms.

Bartholmew, a State Committee member who participated in the removal procedings. A.R. 37.

The Hearing Officer did not abuse his discretion in excluding Ms. White's testimony.

First, as explained in the Federal Regulations, a Hearing Officer has the discretion to exclude

irrelevant and unduly repetitious evidence: "The Hearing Officer may confine the presentation of

facts and evidence to pertinent matters and *exclude irrelevant, immaterial, or unduly repetitious*

evidence, information, or questions." 7 C.F.R. § 11.8 (emphasis added). The USDA, "like all

administrative agencies, has broad authority to fashion its own procedures for developing the

evidence on which it bases its decisions." *Brentwood at Hobart v. N.L.R.B.*, 675 F.3d 999, 1006

(6th Cir. 2012) (citing *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 543-45

(1978).

- 20 -

Kubacki claims that Ms. White's testimony "would corroborate [her] own testimony of asserted innocent conduct," and therefore the testimony would not be cumulative. *See United States v. Ibisevic*, 675 F.3d 342, 351 (4th Cir. 2012); *United States v. Parry*, 649 F.2d 292 (5th Cir. 1981). But Kubacki has never maintained that she is "innocent" of the claimed conduct—she admitted she stored the file in a gun safe and she admitted that she left the file unattended for three days in a non-governmental building. Pl.'s Mot. Summ. J. 21. ("Kubacki has never denied making arrangements to leave the Lumsden file in the Farm Bureau building . . . ."). Rather, Kubacki argues that she should not be held accountable for that action because she did not know her actions were wrong. Thus, Ms. White's alleged bias would not provide corroboration that Kubacki was "innocent" of leaving the file unattended.

The Hearing Officer excluded Ms. White's testimony as irrelevant and cumulative, and Kubacki has not shown that the exclusion was arbitrary and capricious. The exclusion of Ms. White's testimony did not violate Kubacki's due process rights.[7]

**F**

Kubacki's final claim is that her removal was unreasonable and should be reversed. Before determining that Kubacki's removal should be upheld, the Hearing Officer considered the *Douglas* factors, which are "relevant for consideration in determining the appropriateness of a penalty." *Curtis Douglas*, 5 M.S.P. B. 313 (1981). The Court notes that considerable discretion is afforded to the employing agency in assessing the degree of penalty for misconduct. *Stanek v. Dep't of Transp.*, 805 F.2d 1572, 1580 (1986).

---

[7] Kubacki also argues that the exclusion of Christine White as a witness, especially in light of the State Committee's ex parte communication with Christine White about Kubacki's training history, violates her due process rights. However, Christine White did not participate in the ex parte communication about Kubacki's training history; rather, it was *Charlene White*, an employee in Kansas City, who participated in the ex parte communication. A.R. 1613 ("A conference call with Charlene White, Employee Relations in Kansas City, was conducted to discuss the Kubacki personnel matter."). Therefore, this argument is without merit.

Judicial review of the Hearing Officer's conclusions is deferential, and this Court cannot substitute its judgment for that of the agency. *Motor Vehicle Manufacturers Association v. State Farm Mutual Auto. Insurance Co.*, 463 U.S. 29, 43 (1983). "The appropriate standard of review for a penalty determination is an abuse of discretion standard. Indeed, deference is appropriate unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Schuck v. Frank*, 27 F.3d 194, 197 (6th Cir. 1994).

**i**

In his opinion, the Hearing Officer determined that removal was an appropriate sanction for Kubacki's conduct after addressing the *Douglas* factors. The twelve *Douglas* factors are:

(1)    The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

(2)    the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

(3)    the employee's past disciplinary record;

(4)    the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(5)    the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's work ability to perform assigned duties;

(6)    consistency of the penalty with those imposed upon other employees for the same or similar offenses;

(7)    consistency of the penalty with any applicable agency table of penalties;

(8)    the notoriety of the offense or its impact upon the reputation of the agency;

(9)    the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

(10)   the potential for the employee's rehabilitation;

(11)   mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

(12)   the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

*Douglas*, 5 M.S.P.R. at 305-06. After addressing each Douglas factor, the Hearing Officer concluded that removal was appropriate because Kubacki "has failed to recognize any difference between judgments she might make in her private affairs and the higher level of duty that she assumed to protect the public trust." A.R. 28. The Hearing Officer's analysis of the Douglas factors called into question (1) Kubacki's judgment, (2) her mindfulness of her duty as a fiduciary, and (3) her common sense.

The Hearing Officer determined that the incident left the USDA with concerns about Kubacki's judgment. Noting that "what the misconduct reveals of an employee's judgment is highly material," the Hearing Officer concluded that "Kubacki made a conscious choice to leave the contents of the [file] unattended in a non-Government building to be entrusted to a non-Government employee who owed no duty to the Department of Agriculture," and that "[t]he sole reason that Kubacki has offered for this unacceptable delivery arrangement and for not personally delivering the [file] to the CED is that it would have been inconvenient for her to make a separate trip to the County Office the following Monday." A.R. 25. In addition to exercising poor judgment, by leaving the file unsealed and unattended, Kubacki opened the FSA up to Privacy Act lawsuits and "created unacceptable risk." A.R. 27. Kubacki's poor judgment was further revealed by the fact that "Kubacki has shown no meaningful evidence of remorse or acknowledgment of the seriousness of her misconduct." A.R. 28.

- 23 -

Next, the Hearing Officer concluded that Kubacki's mindfulness as a fiduciary was called into question. Her questionable judgment in leaving the file unattended resulted in a loss of the public's trust, and "removal is appropriate when an employee's misconduct results in a loss of trust." A.R. 27 (citing *Lanza v. Department of the Army*, 67 M.S.P.R. 516, 522 (1995)).

Finally, the Hearing Officer also held that Kubacki's misconduct evidenced a lack of common sense. Because "departures from common sense are highly relevant" when assessing the conduct of persons in a supervisory position, the Hearing Officer concluded Kubacki's decision to leave an unsealed file containing PII such as social security numbers unattended illustrated a lack of common sense necessary for someone in her position.

The Hearing Officer ultimately concluded that the *Douglas* factors evidenced that Kubacki exercised poor judgment, did not act as fiduciary, and lacked common sense. He stated that Kubacki "opted for personal convenience and drove home, trusting that a personal friend under no duty to FSA would retrieve the records before anyone else and would not look at their contents. Kubacki should have recognized that her plan was unwise." A.R. 29. The Hearing Officer thus concluded that Kubacki's removal should be sustained. A.R. 29.

**ii**

Kubacki argues that the Hearing Officer's determination is not supported by substantial evidence in the record. She argues that the Hearing Officer failed to take into account several mitigating factors, namely, that she had no past disciplinary record, that she had a positive work record, and that her misconduct was unintentional and inadvertent.[8]

---

[8] Kubacki also repeats several of her earlier arguments—that her removal was impermissibly based on Notice AS-2186, that she received a much harsher penalty than Lumsden for the same behavior, that everyone else was mishandling PII, and that she never received any PII training. As explained before, these arguments were unavailing when Kubacki made them concerning whether the USDA acted arbitrarily and capriciously, and they remain unavailing when addressing the *Douglas* factors.

Contrary to Kubacki's assertions, the Hearing Officer did address those mitigating factors. He stated that "[t]here is no indication that Kubacki had a past disciplinary record," and that "[t]he evidence reflects that Kubacki was highly conscientious" in her job performance. A.R. 26. The Hearing Office concluded, however, that these mitigating facts did not outweigh the other factors that evidenced Kubacki's poor judgment and lack of common sense. Furthermore, he held that "[i]n a situation where Kubacki's misconduct was at odds with common sense, any contention that her confusion or ignorance of policy should be a mitigating factor is without merit." A.R. 27.

From the evidence provided, the Hearing Officer did not abuse his discretion in determining that removal was an appropriate penalty. While Kubacki's past work history may mitigate her misconduct, it is not enough to overcome her grave lapse in judgment, breach of fiduciary duty, and lack of common sense. Accordingly, Kubacki's removal was not an abuse of discretion.

### III

Kubacki has not shown that her removal from the County Committee was the result of an arbitrary and capricious USDA decision. Kubacki left confidential files containing information subject to the Privacy Act unattended in a non-government building for three days, intending that a non-government employee retrieve the file and deliver it to the new CED. Kubacki's conduct breached USDA policies regarding the protection of such confidential information and called into question Kubacki's common sense and judgment. Accordingly, her removal was not arbitrary and capricious.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 34) is **DENIED**.

It is further **ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 32) is **GRANTED**.


s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 13, 2014

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 13, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

---